## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **vs.** | § | **CRIMINAL NO. 15-CR-00263-S** |
| | § | |
| **ASHER ABID KHAN**   and | § | |
| **MOHAMED ZUHBI,** | § | |
| Defendants | § | |

## UNITED STATES' RESPONSE TO THIS COURT'S
## ORDER TO REPORT

On March 31, 2016, this Court ordered the government to "explain how the Constitution gives the court jurisdiction over Mohamed Zuhbi."  The Constitution gives this Court jurisdiction over Zuhbi for the following reasons:  (1) This Court has subject-matter jurisdiction over Zuhbi's alleged conduct under 18 U.S.C. § 3231 because the superseding indictment charges him with offenses against the United States; (2) The charged statutes substantively reach Zuhbi's alleged conduct; and (3) Congress has the constitutional power to proscribe Zuhbi's alleged conduct, consistent with due process and customary international law.

### BACKGROUND

1.  On October 15, 2004, the United States Department of State designated the Islamic State of Iraq and the Levant (ISIL), which at that time was known as al-Qaeda in Iraq (AQI), as a foreign terrorist organization.  Superseding Indictment ¶ 1.  As part of that designation, the Secretary of State was required to find that ISIL's

"terrorist activity * * * threatens the security of United States nationals or the national security of the United States."   8 U.S.C. § 1189(a)(1)(C).   Since the designation of AQI/ISIL, the organization has carried out numerous deadly attacks on U.S. soldiers and civilians and remains a threat to the national security of the United States.[1]

2.   Defendant Mohamed Zuhbi, who was known to Asher Abid Khan as Mohamed Ibn Albaraa (hereinafter "Zuhbi"), is a foreign national, believed to reside in Turkey, who facilitates the travel to Syria of foreign fighters seeking to join ISIL. Superseding Indictment ¶ ¶ 3, 5, 6, and 8;[2] Complaint ¶ ¶ 9-10.[3]   Defendant Asher Abid Khan is a U.S. citizen residing in the Houston area.   Superseding Indictment ¶ 2; Complaint ¶ ¶ 3, 8.

In January and February of 2014, Khan, while living in Australia, recruited his friend, S.R.G., who then resided in South Texas, to travel with Khan to Syria in order to join with ISIL as fighters.   Superseding Indictment ¶ 8.   Khan then asked Zuhbi, through electronic communications, to help him get to Syria and join ISIL.   Zuhbi gave Khan instructions, including his cell phone number, on how Khan should meet him once Khan arrived in Turkey.   *Id.*

---

[1] *See generally* Stephen W. Preston, General Counsel for U.S. Department of Defense, Address at Annual Meeting of the American Society of International Law (April 10, 2015).   Available at: http://www.defense.gov/News/Speeches/Speech-View/Article/606662/the-legal-framework-for-the-united-states-use-of-military-force-since-911.

[2] Zuhbi is currently a fugitive believed to be somewhere along the border of Turkey and Syria.   A warrant for Zuhbi's arrest was issued on March 9, 2016 by this Court.   Upon his arrest, it is anticipated that Zuhbi will be extradited to the United States.

[3] Zuhbi is referred to as "CC-1" in the complaint.

On February 24, 2014, Khan and S.R.G. traveled to Turkey and met there. Khan's family tricked him into returning home to the United States, but S.R.G. remained in Turkey. *Id.* As soon as Khan returned to the United States, he contacted Zuhbi and introduced him to S.R.G. so that Zuhbi could help S.R.G. cross over into Syria and join ISIL. *Id.* Zuhbi then instructed S.R.G. to meet him at a hotel. *Id.* The following day, S.R.G. confirmed to Khan that S.R.G. had "been delivered" by Zuhbi. *Id.* In August 2014, S.R.G. informed Khan that, after attending training camps, he had finally joined with ISIL. *Id.* On December 25, 2014, S.R.G.'s mother received an electronic message indicating that her son had died while fighting. *Id.*

3.   On March 9, 2016, a federal grand jury in the Southern District of Texas returned a superseding indictment charging Zuhbi and Khan with the following offenses:

Count 1 charges Zuhbi and Khan with conspiring to provide material support to ISIL, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B.

Count 2 charges Zuhbi and Khan with conspiring, within the jurisdiction of the United States, to kill persons in a foreign country, in violation of 18 U.S.C. § 956.

Count 3 charges Zuhbi and Khan with conspiring to provide material support to terrorists knowing and intending that the material support was to be used in preparation for and in carrying out a violation of 18 U.S.C. § 956 (conspiracy to kill in a foreign country), in violation of 18 U.S.C. § 2339A.

Count 6 charges Zuhbi and Khan with providing and attempting to provide material support to ISIL, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B and 18 U.S.C. § 2.[4]

## DISCUSSION

## I.   This Court Has Subject-Matter Jurisdiction Over Zuhbi's Alleged Conduct Because the Superseding Indictment Charges Him With Offenses Against the United States

Under 18 U.S.C. § 3231, "[a] federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges * * * that the defendant committed a crime described in Title 18." *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013). In this case, the superseding indictment charges Zuhbi with federal crimes under Title 18 and, thus, this Court has subject-matter jurisdiction over the charges against Zuhbi under Section 3231. *See United States v. Rojas*, 812 F.3d 382, 390 n.2 (5th Cir. 2016) (quoting *United States v. Kaluza*, 780 F.3d 647, 655 n. 20 (5th Cir. 2015)) ("In the criminal context, 18 U.S.C. § 3231 is all that is necessary to establish a court's power to hear a case involving a federal offense, whether or not the conduct charged proves beyond the scope of Congress' concern or authority in enacting the statute at issue."); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1342-43 (D.C. Cir. 2004) (a claim that the Constitution limits the extraterritorial reach of a statute is "not a claim that the court lacks the power to bring [the defendant] to court at all" and is

---

[4] Counts 4 and 5 charge Khan separately with additional violations of Section 2339A and 2339B and Section 2.

"irrelevant to the court's Article III subject matter jurisdiction").  Accordingly, any challenge to the constitutionality of the charged statutes, based on a claim that the statutes cannot reach Zuhbi's extraterritorial acts, does not go to the court's jurisdiction but is instead "a question on the merits." *Rojas*, 812 F.3d at 390.  Any such claim must be properly raised by a defendant with standing to raise it, or else the claim is forfeited or waived.  *See id.* at 390-91; *Delgado-Garcia*, 374 F.3d at 1342-43.

## II.    The Charged Statutes Substantively Reach Zuhbi's Alleged Conduct Even Though He is a Foreign National Outside the United States

### A.    Sections 956 and 2339A

Counts 2 and 3 of the superseding indictment charge Zuhbi with violating 18 U.S.C. § 956 (prohibiting conspiracies within the United States to commit murder abroad) and with violating Section 2339A by conspiring to provide material support to a violation of Section 956.  This Court's jurisdiction over those offenses is not extraterritorial because Section 956 requires that "at least one of the conspirators was within the jurisdiction of the United States when the agreement was made." *United States v. Wharton*, 320 F.3d 526, 538 (5th Cir. 2003).  That requirement is satisfied here because both Khan and S.R.G. were within the United States for at least some of the period during which they conspired with Zuhbi to kill overseas as fighters of ISIL.  In particular, at the beginning of the dates alleged in the superseding indictment, S.R.G. was in the United States when he first started making plans with Khan to travel to join ISIL, and later, after S.R.G. traveled to Turkey, and after Khan returned to the United

States, the superseding indictment charges that Khan contacted Zuhbi via electronic communications in order to put S.R.G. into contact with Zuhbi.   Superseding Indictment ¶ 8.h.   S.R.G. confirmed with Khan the next day that S.R.G. "had been delivered" by Zuhbi.  *Id.* ¶ 8.j.  These communications, showing that S.R.G. was in the United States at the start of the conspiracy, and then later Khan was in the United States when he put Zuhbi in contact with S.R.G., establish that "at least one of the conspirators" was in the United States during the course of the conspiracy.  *Wharton*, 320 F.3d at 538.   The fact that Zuhbi was located outside the United States throughout the conspiracy is immaterial because the statutory requirement is satisfied so long as one conspirator was within United States jurisdiction, "regardless of where such other [coconspirators] are located."  18 U.S.C. § 956.

Because there is territorial jurisdiction over the predicate Section 956 offense, there is also "derivative jurisdiction" over "ancillary offenses," such as the Section 2339A conspiracy charged in Count 3, because the jurisdictional scope of such offenses corresponds to that of the crime that the material support is intended to facilitate.  *See United States v. Yousef*, 327 F.3d 56, 87-88 (2d Cir. 2003).

## B.   Section 2339B

The superseding indictment also charges Zuhbi with conspiracy and substantive violations of 18 U.S.C. § 2339B in Counts 1 and 6.[5]  That statute prohibits knowingly providing "material support or resources" to a "foreign terrorist

---

[5] Count 6 also alleges aiding and abetting under 18 U.S.C. § 2.

6

organization."   In enacting Section 2339B, Congress found that "[i]nternational terrorism is a serious and deadly problem that threatens the vital interests of the United States." Pub. L. No. 104-132, § 301(a)(1), 110 Stat. 1214, 1247 (1996).  Congress made clear that this country is not to "be used as a staging ground for those who seek to commit acts of terrorism against persons in other countries." H.R. Rep. No. 104-383, at 43 (1995).  Congress viewed a prohibition on providing material support to terrorist organizations as "absolutely necessary to achieve the government's compelling interest in protecting the nation's safety from the very real and growing terrorist threat." H.R. Rep. No. 104-383, at 45. *See also* Pub. L. No. 104-132, § 301(a)(1), 110 Stat. at 1247. As a result, Congress sought to prohibit the provision of support to such organizations "to the fullest possible basis, consistent with the Constitution." *Id.* § 301(b), 110 Stat. at 1247.

Section 2339B requires that the defendant "must have knowledge that the organization is a designated terrorist organization," or that "the organization has engaged or engages in terrorist activity."  18 U.S.C. § 2339B.  The superseding indictment in the present case alleges that ISIL has been designated as a terrorist organization. Superseding Indictment ¶ 1.  It further alleges that Zuhbi knew of the designation and knew that ISIL had engaged and was engaging in terrorist activity and terrorism. Superseding Indictment ¶ ¶ 4, 18.

Section 2339B explicitly grants extraterritorial jurisdiction in a number of specified circumstances.  *See* 18 U.S.C. § 2339B(d)(1) and (d)(2).  The superseding

7

indictment here satisfies several of those statutory predicates for extraterritorial jurisdiction, including (1) the offense "occurred, in whole or in part, in the United States," *see* Superseding Indictment ¶ 8.h (alleging that Khan contacted Zuhbi from the United States in order to put Zuhbi in contact with S.R.G. for the purpose of facilitating S.R.G.'s travel to Syria); (2) the offender "aided and abetted or conspired with any person over whom jurisdiction exists," including "a U.S. citizen or a permanent resident alien," *see* Superseding Indictment ¶ 4, Complaint ¶ 8 (alleging that Zuhbi conspired with Khan, a U.S. citizen, and with S.R.G.); and (3) the offense "occurred in, or affects, interstate or foreign commerce," *see* Superseding Indictment ¶ 8 (alleging overt acts committed through electronic communications and air travel between the United States, Turkey, and Syria).  Accordingly, Section 2339B provides several independent grounds for extraterritorial jurisdiction over Zuhbi's alleged conduct.  *See* 18 U.S.C. § 2339B(d)(1)(A),(D),(E),(F) and 2339B(d)(2)(providing that "[t]here is extraterritorial Federal jurisdiction over an offense under this section.").

**III.   Congress's Provision of Extraterritorial Jurisdiction Over The Alleged Conduct Is Consistent with the Constitution and Customary International Law**

**A. Congress Has Constitutional Power Under the Commerce Clause and Necessary and Proper Clause To Proscribe the Extraterritorial Conduct Alleged Here**

The Commerce Clause of the Constitution, Art. I, § 8, cl. 3, gives Congress the power to regulate two types of commerce:  foreign and interstate.  Congress's power

8

to regulate foreign commerce is broader because it is not restricted by federalism concerns. *See Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 449 n.13 (1979) (explaining that, while "Congress' power to regulate interstate commerce may be restricted by considerations of federalism and state sovereignty," "[i]t has never been suggested that Congress' power to regulate foreign commerce could be so limited"); *see also Board of Trs. of Univ. of Ill. v. United States,* 289 U.S. 48, 57, 59 (1933) (noting that "[t]he principle of duality in our system of government does not touch the authority of the Congress in the regulation of foreign commerce" and that "with respect to foreign intercourse and trade the people of the United States act through a single government with unified and adequate national power"); *Buttfield v. Stranahan*, 192 U.S. 470, 493 (1904) (referring to "the complete power of Congress over foreign commerce"); *cf. Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 193-194 (1824) (explaining that "[n]o sort of trade can be carried on between this country and any other, to which [the Foreign Commerce Clause] power does not extend").

In enacting Section 2339B, Congress explicitly found that "international terrorism affects the interstate and foreign commerce of the United States by harming international trade and market stability, and limiting international travel by United States citizens as well as foreign visitors to the United States." *See* Pub. L. 104-132, tit. III, § 301(a)(4), 110 Stat. 1247 (1996). As noted above, the allegations in this case involve both commercial air travel and electronic communications between the United States and foreign countries, including Turkey and Syria. Because the offense

conduct occurred in and through foreign commerce, Congress has power under the Foreign Commerce Clause to regulate it. *See* U.S. Const. Art. I, § 8, cl. 3; 18 U.S.C. § 2339B(d)(1)(E) (providing that the Court has jurisdiction over a terrorism case if "the terrorist offense occurs in or affects interstate or foreign commerce").  The government is unaware of any case in which the Supreme Court or a court of appeals has invalidated any of these statutes on the ground that they exceeded Congress's authority under the Foreign Commerce Clause. To the contrary, the Fifth Circuit and other federal courts have rejected Foreign Commerce Clause challenges to prosecutions for conduct that involves foreign travel. *See Rojas*, 812 F.3d at 391 (citing cases).

Extraterritorial application of Section 2339B may also be upheld as necessary and proper to the implementation of the international treaty obligations of the United States. *See* U.S. Const. art. I, § 8, cl. 18; *United States v. Ali Yasin Ahmed*, 94 F. Supp. 3d 394, 414-15 (E.D.N.Y. 2015) (noting that "the United States is party or signatory to numerous international conventions and treaties relating to terrorism" and accordingly upholding extraterritorial application of Section 2339B under Congress's treaty power); *United States v. Lawrence*, 727 F.3d 386, 396-97 (5th Cir. 2013) (upholding extraterritorial application of drug importation statute as a valid exercise of Congress's treaty power).  Moreover, Congress's constitutional authority to "define and punish * * * Offences against the Law of Nations," U.S. Const. art. I, § 8, cl. 10, provides an additional basis for punishing the provision of material support to terrorism. *See Ali*

*Yasin Ahmed*, 94 F. Supp. 3d at 415 (upholding Section 2339B on this ground); *United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991) (noting that certain acts of terrorism are "recognized by the community of nations as of [such] universal concern" as to enable any nation obtaining custody over an offender to prosecute him); *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011) (noting that Section 2339B was enacted pursuant to, *inter alia*, "the power of Congress to make laws necessary and proper to the nation's defense"); Pub. L. 104-132, tit. III, § 301(a)(4), 110 Stat. 1247 (1996) (Congressional finding, in enacting Section 2339B, that "the Constitution confers upon Congress the power to punish crimes against the law of nations and to carry out the treaty obligations of the United States, and therefore Congress may by law impose penalties relating to the provision of material support to foreign organizations engaged in terrorist activity.").

### B.  Application of Sections 956, 2339A, and 2339B to the Charged Conduct Is Consistent With Due Process and Customary International Law

Extraterritorial application of a criminal statute is consistent with the Due Process Clause of the Fifth Amendment where there is "a sufficient nexus between the conduct condemned and the United States" such that application of the statute would not be "arbitrary or fundamentally unfair to the defendant." *Rojas*, 812 F.3d at 393; *see also United States v. Suerte*, 291 F.3d 366, 372 (5th Cir. 2002). In considering whether a sufficient nexus exists, the Fifth Circuit has looked to whether the assertion

11

of extraterritorial jurisdiction comports with customary international law principles. *See Rojas*, 812 F.3d at 392; *Lawrence*, 727 F.3d at 394-96; *Suerte*, 291 F.3d at 370; *see also United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011).[6]

International law "permits the exercise of criminal jurisdiction by a nation under five general principles. They are the territorial, national, protective, universality, and passive personality principles." *Lawrence*, 727 F.3d at 394. At least two of those bases are relevant here: (1) the "protective principle," which provides for jurisdiction for conduct committed outside the State that harms the State's interests; and (2) the "territorial principle," which provides for jurisdiction over conduct committed outside a State's borders that has, or is intended to have, a substantial effect within its territory. *See Yousef*, 327 F.3d at 91 n.24.[7]

---

[6] Although the Fifth Circuit's decision in *Lawrence* could be construed as suggesting that international law of its own force governs whether a statute may be applied extraterritorially, *see* 727 F.3d at 394, the court's application of customary international law principles should be understood as informing the due process inquiry of whether the exercise of jurisdiction is "arbitrary or fundamentally unfair." *See Yousef*, 327 F.3d at 109 ("[C]ourts of the United States are * * * obligated to give effect to an unambiguous exercise by Congress of its [power to grant jurisdiction to courts] *even if such an exercise would exceed the limitations imposed by international law.*") (emphasis in original) (internal quotation marks and citations omitted)).

[7] The "nationality principle," which provides for jurisdiction over extraterritorial acts committed by a State's own citizens, could also apply. Under the nationality principle, "a country may supervise and regulate the acts of its citizens both within and without its territory." *Lawrence*, 727 F.3d at 394.; *see also United States v. Mitchell*, 553 F.2d 996, 1001 (5th Cir. 1977) ("It is generally accepted that the legislative authority of the United States over its citizens extends to conduct by Americans * * * even within the territory of other sovereigns."). Under this theory, the exercise of jurisdiction over Khan's conduct is proper because he is a U.S. citizen. And, as discussed in Part II above, there is derivative extraterritorial jurisdiction over foreign nationals such as Zuhbi who conspired with Khan.

### 1.    *The Protective Principle*

"Under the protective principle, a country can enforce criminal laws *wherever and by whomever* the act is performed that threatens the country's security or directly interferes with its governmental operations." *Rojas*, 812 F.3d at 392; *see also United States v. Peterson*, 812 F.2d 486, 493-94 (9th Cir. 1987) (finding jurisdiction may be appropriate under the "protective principle" even "without any showing of an actual effect on the United States," so long as "the activity threatens the security or governmental functions of the United States"). Accordingly, in *Rojas* the Fifth Circuit held that the protective principle justified the extraterritorial application of a drug trafficking statute because "Congress has demonstrated * * * that it considers the international drug trade to be a major threat to the safety of the United States." *Id.* (quoting *Lawrence*, 727 F.3d at 391, 395). The same reasoning applies *a fortiori* to the extraterritorial application of the terrorism statutes at issue here.

The superseding indictment alleges that Zuhbi conspired to, and did, provide material support to ISIL. ISIL's terrorist activities cause harm to the national security interests of the United States, as the Secretary of State found in designating it as a foreign terrorist organization. *See* 8 U.S.C. § 1189(a)(1)(C); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("[T]he Government's interest in combating terrorism is an urgent objective of the highest order."). The seriousness of the harm posed by ISIL could not be more grave. *See generally supra* note 1.

By providing additional personnel to serve as fighters in ISIL's ranks, Zuhbi directly contributed to and supported all aspects of the organization's mission, thereby engaging in criminal activity that harmed the interests of the United States and threatened its security. *See Humanitarian Law Project*, 561 U.S. at 29-30 (recognizing that providing valuable resources in any form to a terrorist organization "makes it easier for those groups to persist, to recruit members, and to raise funds – all of which facilitate more terrorist attacks"); *see also id.* (providing material support "furthers terrorism by straining the United States's relationships with its allies and undermining cooperative efforts between nations to prevent terrorist attacks."). That conduct is sufficient to establish the requisite nexus between the crimes charged and the United States, and to apply the relevant federal criminal statutes extraterritorially is consistent with the protective principle and due process. For similar reasons, courts have routinely denied terrorism defendants' due process challenges to extraterritorial application of terrorism statutes. *See, e.g., United States v. Mohamed Ibrahim Ahmed*, 2011 WL 5041456, *2 (S.D.N.Y. 2011) (holding that the findings of harm required to designate a foreign terrorist organization, together with a requirement that defendant knew the organization was designated or that it engaged in terrorism, "ensure that there is a nexus to American interests so as to render the prosecution neither arbitrary nor fundamentally unfair"); *see also Yousef*, 327 F.3d at 111; *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011); *Ali Yasin Ahmed*, 94 F.Supp.3d at 413-17 (holding that prosecution in the United States, for conspiring to provide material support or

14

resources to and receiving military-type training from a designated foreign terrorist organization, based on conduct allegedly committed entirely outside of the U.S. by non-United States nationals, did not violate the Due Process Clause); *United States v. Naseer*, 38 F.Supp.3d 269 (E.D.N.Y. 2014)(holding that the district court possessed jurisdiction over the defendant charged with providing material aid to a designated foreign terrorist organization and use of a destructive device in relation to a crime of violence, based on the defendant's participation in a conspiracy involving coordinated attacks in the United States, the United Kingdom, and Norway, notwithstanding the fact that the defendant's alleged conduct took place overseas).

### 2.   *Territorial Principle*

The territorial principle also supports applying the charged statutes to the conduct alleged in this case because much of that conduct either occurred within or was intended to have an effect in the United States.  *See Rojas*, 812 F.3d at 393; *United States v. Moncini*, 882 F.2d 401, 403 (9th Cir.1989) ("Jurisdiction is proper if the offense, or part of the offense, occurred within the United States.").  The application of this principle is especially clear in the context of Count 2 (charging a violation of 18 U.S.C. § 956), and Count 3 (charging a violation of 18 U.S.C. § 2339A with Section 956 as a predicate offense) because Section 956 explicitly requires as an element that at least one of the coconspirators must have committed an overt act within the jurisdiction of the United States.  *See Wharton*, 320 F.3d at 538.  But in any event, as to all three charged statutes, the superseding indictment alleges that Zuhbi

communicated electronically with Khan while Khan was in the United States and that those communications enabled him to assist another person, who had traveled from the United States, to go to Syria and fight for ISIL. It is reasonable under the territorial principle, and thus the Due Process Clause, for the United States to punish such conduct, which both occurred in and had an effect in the United States.

### 3. *Fair Warning*

Finally, Zuhbi has "fair warning" under the Due Process Clause that his "conduct could be criminally prosecuted." *Rojas*, 812 F.3d at 393; *see also id.* ("Fair warning does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere."). Terrorism is "self-evidently criminal" in nature, and a person who "renders material support to * * * an organization that he knows is a [designated] foreign terrorist organization ought to reasonably expect that he would be subject to prosecution in some jurisdiction." *Ahmed*, 2011 WL 5041456, at *3; *see also Rojas*, 812 F.3d at 393 (finding that a defendant has fair warning where the charged offense is "condemned universally by law-abiding nations").

16

## CONCLUSION

This Court has jurisdiction pursuant to 18 U.S.C. § 3231.  Congress had the power under the Foreign Commerce Clause, as well as the Necessary and Proper Clause and other Article I, § 8 clauses, of the Constitution to proscribe the conduct charged.  Prosecution of Zuhbi in the United States would not violate the Due Process Clause.

      Respectfully submitted,

KENNETH MAGIDSON
United States Attorney

By:    s// *Carolyn Ferko*
**CAROLYN FERKO**
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9562

s// *Alamdar Hamdani*
**ALAMDAR S. HAMDANI**
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9503

s// *Carmen Castillo Mitchell*
**CARMEN CASTILLO MITCHELL**
Assistant United States Attorney
Deputy Chief, Appellate Division
United States Attorney's Office
Southern District of Texas

17

1000 Louisiana, Suite 2300
Houston, TX 77002
(713) 567-9102

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was sent via ECF on this 15th day of April, 2016 to counsel for Defendant Asher Abid Khan.

By:    <u>s// *Carolyn Ferko*</u>
**CAROLYN FERKO**
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9562

<u>s// *Alamdar Hamdani*</u>
**ALAMDAR S. HAMDANI**
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9503

<u>s// *Carmen Castillo Mitchell*</u>
**CARMEN CASTILLO MITCHELL**
Assistant United States Attorney
Deputy Chief, Appellate Division
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, TX 77002
(713) 567-9102